IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KERBY CHERUBIN<br>1403 Stuyvesant Avenue<br>Trenton, NJ 08618,<br><br>    Plaintiff<br><br>v.<br><br>RELIANCE STANDARD<br>LIFE INSURANCE COMPANY<br>1700 Market Street, Suite 12000<br>Philadelphia, PA 19103<br><br>    Defendant | No. |

## **COMPLAINT**

Plaintiff Kerby Cherubin ("Plaintiff" or "Ms. "Cherubin"), through her undersigned counsel, for her Complaint against Defendant Reliance Standard Life Insurance Company ("Defendant" or "Reliance"), states as follows.

## **INTRODUCTION**

1. This is an action brought pursuant to Section 502(a) of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq*. ("ERISA"). ERISA is a remedial statute that Congress enacted to protect "the interests of participants in employee benefit plans and their beneficiaries" by requiring the establishment of uniform standards of disclosure, conduct, and fiduciary responsibility. 29 U.S.C. § 1001(b). It imposes higher than marketplace standards on insurers and employee benefit plan fiduciaries—like Defendant—who must act in the sole interest of benefit plan participants and their beneficiaries for the exclusive purpose of providing benefits under the terms of an employee benefit plan.

2. Section 503 of ERISA provides that "every employee benefit plan shall . . . afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133(2).

3. In accordance with ERISA, the United States Department of Labor's Employee Benefits Security Administration has established a claims procedure that "sets forth the minimum requirements for employee benefit plan procedures pertaining to claims for benefits by participants and beneficiaries," such as Plaintiff. 29 C.F.R. § 2560.503–1.

4. With respect to appeals from disability benefits determinations, the claims procedure requires a plan administrator to decide the appeal within 45 days of the plan's receipt of the appeal, unless the plan administrator determines that "special circumstances require an extension of time for processing the claim," in which case "written notice of the extension shall be furnished to the claimant prior to the termination of the initial 45-day period. In no event shall such extension exceed a period of 45 days from the end of the initial period." *See* 29 C.F.R. § 2560.503–1(i)(1)(i) and (i)(3)(i).

5. Under 29 C.F.R. § 2560.503–1(l)(2)(i), "if the plan fails to strictly adhere to all the requirements of this section with respect to a claim, the claimant is deemed to have exhausted the administrative remedies available under the plan," and "the claimant is entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim." Further, "[i]f a claimant chooses to pursue remedies under section 502(a) of the Act [29 U.S.C. § 1132(a)] under such circumstances, the claim or appeal is deemed denied on review *without the exercise of discretion by an appropriate fiduciary*." *Id.* (emphasis added).

6. Defendant wrongly terminated Ms. Cherubin's employee benefits that she was entitled to under the terms of the Virtual Health, Inc. Health & Welfare Plan ("the Plan"), denied her a full and fair review of her claim for Plan benefits when she appealed the adverse claim determination at issue in this case and violated the ERISA claims procedure applicable to the Plan and Ms. Cherubin's appeal.

## THE PARTIES

7. Kerby Cherubin is a resident of Trenton, New Jersey, a former employee of Virtua Health, Inc. ("Virtua") and a participant in the Plan.

8. Non-party Virtua sponsors The Plan.

9. Non-party Virtua serves as the Plan's Administrator as that term is defined in Section 3(16)(A) of ERISA, 29 U.S.C. § 1002(16)(A).

10. The Plan is an employee welfare benefit plan that provides disability benefits to eligible Plan participants subject to the terms of the Plan.

11. Reliance Standard Life Insurance Company ("Reliance") is an insurance company with its principal place of business located in Philadelphia, Pennsylvania.

12. Reliance issued a group policy of long-term disability insurance bearing Group Policy No. LSC 97,200 ("the Group Policy") to certain Virtua employees, including Plaintiff, and is responsible for adjudicating claims for long-term disability benefits arising under the Plan.

13. Reliance is responsible for adjudicating and paying claims for long-term disability benefits arising under the Plan. As a result, Reliance operates under an inherent financial conflict of interest as a matter of law. *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 112-14 (2008).

14. At all times relevant to the claims asserted in this Complaint, Defendant is a fiduciary as that term is defined in Section 3(21) of ERISA, 29 U.S.C. § 1002(21), as it, *inter alia,* exercises authority or control respecting management or disposition of Plan assets.

15. Defendant is liable for any LTD benefits determined to be due to Plaintiff under the terms of the Plan.

## JURISDICTION AND VENUE

16. The Court has general subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as it arises under ERISA—a law of the United States—and specifically pursuant to 29 U.S.C. §§ 1132(e)(1) and 1132(f), which gives the District Court jurisdiction to hear civil actions brought pursuant to 29 U.S.C. § 1132.

17. The Court has personal jurisdiction over Defendant as the Plan is administered in this District and Division, Defendant regularly transacts business in this District and Division, and Defendant has consented to the Court's personal jurisdiction. This Court also has personal jurisdiction over Defendant because it has significant contacts with this District, and because ERISA provides for nationwide service of process pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

18. Venue is proper in this District pursuant to 29 U.S.C. §1132(e)(2) because at all relevant times: (a) the Plan was and is administered in this District; (b) the breaches and violations giving rise to the claims occurred in this District; and (c) Defendant may be found in this District. Venue is also proper under 28 U.S.C. § 1391(b) and (c) because a substantial part of the events or omissions giving rise to this action occurred in this District, and Defendant resides here.

## FACTS COMMON TO ALL COUNTS

19. Ms. Cherubin is currently 43 years old, and she last worked on August 31, 2022.

20. Prior to becoming disabled, Ms. Cherubin worked as a nurse for Virtua.

21. Ms. Cherubin became disabled after suffering a traumatic injury when a sheet of glass fell off a table and onto her lower right leg. She underwent emergency surgery to repair her Achilles and flexor tendons. Since then, she has undergone additional surgeries on both legs, suffering complications, and she now has numerous disabling conditions including Complex Regional Pain Syndrome and various nerve injuries and associated pain.

22. Reliance approved Ms. Cherubin's claim for long-term disability ("LTD") benefits on July 18, 2023.

23. The group LTD policy defines disability, in pertinent part, as follows:

> "Totally Disabled" and "Total Disability" mean, that as a result of an Injury or Sickness:
> (1) during the Elimination Period and for the first 24 months for which a Monthly Benefit is payable, you cannot perform the material duties of your regular occupation;
>   (a) "Partially Disabled" and "Partial Disability" mean that as a result of an Injury or Sickness you are capable of performing the material duties of your regular occupation on a part-time basis or some of the material duties on a full-time basis. If you are Partially Disabled you will be considered Totally Disabled, except during the Elimination Period;
>   (b) "Residual Disability" means being Partially Disabled during the Elimination Period. Residual Disability will be considered Total Disability; and
> (2) after a Monthly Benefit has been paid for 24 months, you cannot perform the material duties of any occupation. Any occupation is one that your education, training or experience will reasonably allow. We consider you Totally Disabled if due to an Injury or Sickness you are capable of only performing the material duties on a part-time basis or part of the material duties on a full-time basis.

24. Reliance continued to approve and pay Ms. Cherubin's LTD benefits for 24 months.

5

25. By letter dated March 20, 2025, Reliance terminated Ms. Cherubin's LTD benefits effective April 21, 2025, the date on which the Plan's definition of disability changed from being unable to perform the material duties of her *own occupation* to being unable to perform the material duties of *any occupation*.

26. On September 15, 2025, Ms. Cherubin submitted a timely appeal of Reliance's termination of her LTD benefits.

27. In her September 15, 2025 appeal, Ms. Cherubin expressly stated:

> Given the fact that her medical treatment remains ongoing, Ms. Cherubin expressly reserves the right to supplement this appeal until such time as a decision is rendered on her claim. Ms. Cherubin also reserves the right to review and respond to any new information, new rationales for denying her claim, or new consulting expert opinions that Reliance obtains prior to issuing a final decision on her appeal. Ms. Cherubin also reserves the right to review and respond to any new information, new rationales for denying her claim, or new consulting expert opinions that Reliance obtains prior to issuing a final decision on her appeal. *See* 29 C.F.R. § 2560.503-1(h)(4).

28. Less than two weeks later, on September 26, 2025, Reliance sent a letter stating, in part, as follows: "We have conducted an initial review of the information in the claim file, and have determined that we will require that you undergo an independent medical examination (IME), prior to the conclusion of our review." The September 26, 2025 letter further stated: "Once we receive the independent physician report, we will update you or inform you should we determine that additional information would be required as part of this review. As we are still in the process of completing our review, we will be contacting you in the near future with an update or to inform you if additional information will be required."

29. On October 2, 2025, Network Medical Review Co., LLC ExamWorks notified Ms. Cherubin that an "Independent Medical Examination" was scheduled to take place on October 30,

6

2025, from 4:30pm to 5:30pm, with Dr. Daniel S. Rosenberg, specializing in "Physical Medicine and Rehabilitation" in Cherry Hill, New Jersey.

30. By emails to Reliance and ExamWorks dated October 7, 2025, Ms. Cherubin, through counsel, advised that she was scheduled for upcoming surgeries on October 16 and November 20 and that the October 30, 2025 date may not work.

31. When she did not hear anything further, on October 14, 2025, Ms. Cherubin, through counsel, sent a letter to Reliance stating as follows:

> I am writing as a follow up to my October 7, 2025 email regarding the IME currently scheduled to take place on October 30, 2025. Whether Ms. Cherubin will be able to proceed on that date is ultimately up to her treating medical provider, given any restrictions and limitations she may have after her surgery on October 16, 2025. As a separate matter, please be advised that Ms. Cherubin previously sought treatment from Dr. Daniel Rosenberg, with whom the IME is scheduled, and she was informed that he was unable to treat her because he does not treat patients with complex regional pain syndrome (CRPS), from which she suffers. If Reliance nevertheless wishes to proceed with the IME with Dr. Rosenberg, Ms. Cherubin requests that the IME take place at Dr. Rosenberg's main office, which is located in Ewing, New Jersey (as opposed to Cherry Hill as scheduled), as the Ewing location is much more conveniently located to Ms. Cherubin's residence.

32. The IME was then apparently cancelled and on October 16, 2025, Reliance informed Ms. Cherubin that her claim file was being sent for an external physician review by an Orthopedist and Neurologist. Reliance's October 16, 2025 letter further stated: "Once the independent physician report is received and we have an opportunity to review it, we will update you or inform you should we determine that additional information would be required as part of this review."

33. On October 27, 2025, Ms. Cherubin supplemented her appeal with additional medical records and information related to her October 16, 2025 surgery.

34. Although it communicated with Ms. Cherubin throughout, Reliance did not request an extension of time to decide Ms. Cherubin's appeal within the initial 45-day time-period.

35. On November 17, 2025—more than 60 days after Ms. Cherubin submitted her initial appeal—Reliance sent another letter to Ms. Cherubin, enclosing copies of consultants' reports, and stating as follows:

> Upon review, we did initially attempt to schedule an Independent Medical Exam (IME); and acknowledge your cooperation in the scheduling of the IME. Due to your client undergoing surgeries on October 16, 2025 and November 20, 2025; we would have been unable to schedule an IME in a timely manner. Therefore, we forwarded your client's file to two independent physicians for review. Through the use of a third-party vendor, your client's file was forwarded to Lara K. Edinger, DO who is Board Certified in Neurology and Christopher R. Balint, DO who is Board Certified in Orthopaedic Surgery.

36. In its November 17, 2025 letter, Reliance also advised that it had forwarded the reports of the above two physicians to a Vocational Rehabilitation Specialist in its vocational unit to perform a Residual Employability Analysis and concluded:

> Based on our review of documentation currently on file, your client's condition does not meet the requirements of Total Disability for the period of April 21, 2025 and ongoing. Please review this correspondence and the attached reports, and if you wish to submit additional documentation, please do so on later than December 2, 2025.

37. Ms. Cherubin submitted her response to the reports on December 2, 2025, again reserving the right to submit additional information prior to Reliance making a decision as her medical treatment remains ongoing.

38. Ms. Cherubin further supplemented her appeal with additional medical records and information on December 2, December 4 and December 18, 2025.

39. On January 8, 2026, when Ms. Cherubin still had not received a decision on her appeal, she, through counsel, sent a letter to Reliance stating as follows:

> I am writing to follow up on the status of the above-referenced appeal. Assuming Reliance's deadline to decide Ms. Cherubin's appeal was tolled for 15 days during the review and response period, Reliance's decision was due by December 30, 2025. As of today's date, I have not yet received a decision.

In accordance with 29 C.F.R. § 2560.503-1(l)(2)(ii), please provide a written explanation for Reliance's violations of the regulation within the next ten (10) days or this matter shall be considered a deemed denial pursuant to 29 C.F.R. § 2560.503-1(l)(2)(i) due to, among other things, Reliance's failure to timely decide Ms. Cherubin's appeal as required by 29 C.F.R. § 2560.503- 1(i)(3).

40. The next day, on January 9, 2026, Reliance's Appeals Specialist, Spencer Wright, responded by email as follows:

Good Afternoon,

I did review this claim and your correspondence.

Additional documentation was received on December 18, 2025 and referred to the independent physician's [sic] for review on December 29, 2025 in order to determine if the information would alter their initial findings.

I anticipate receiving a response from them by January 18, 2026, and will keep you updated.

Please let me know if you have any questions.

41. It is now after January 18, 2026 and it has been 127 days since Ms. Cherubin submitted her initial appeal to Reliance—well beyond the maximum of 90 days (assuming it requested a 45-day extension within the initial 45 days) afforded under 29 C.F.R. § 2560.503–1(i)(3)(i)—and Reliance has not further communicated with Ms. Cherubin or provided any "special circumstances" to justify this impermissible delay.

42. Indeed, Ms. Cherubin's December 18, 2025 submission included additional medical records from an emergency room visit in connection with a fall that occurred on December 2, 2025, and regarding physical therapy following her two recent surgeries.

43. Ms. Cherubin's appeal is now deemed denied by Reliance's failure to issue a timely decision, and Ms. Cherubin has exhausted her appeals under ERISA.

44. In denying Ms. Cherubin's appeal, Reliance, among other things, ignored the terms of the Plan, evidence in the record and the opinions of Ms. Cherubin's treating provides and, instead, favored the opinions of its paid consultants and its own employee, none of whom ever met with or personally examined or assessed Ms. Cherubin.

45. All conditions precedent to filing suit have been completed.

## COUNT I – DENIAL OF BENEFITS
## PURSUANT TO 29 U.S.C. §§ 1132(A)(1)(B)

46. Ms. Cherubin repeats, reaffirms, and realleges paragraphs 1 through 45 of the Complaint as if they were fully restated at length herein.

47. Ms. Cherubin has exhausted her administrative remedies under the Plan and, thus, all conditions precedent to the filing of this action have been performed or have occurred.

48. Ms. Cherubin is entitled to long-term disability benefits under the terms of the Plan because she is disabled as defined by the Plan.

49. The denial of Ms. Cherubin's claim for benefits was contrary to the terms of the Plan and *de novo* wrong.

50. Reliance failed to provide Ms. Cherubin with a full and fair review of her claim and failed to issue a timely determination on review in violation of Section 503 of ERISA, 29 U.S.C. § 1133, as well as 29 C.F.R. § 2560.503-1.

51. Reliance's failure to issue a timely decision on Ms. Cherubin's appeal in violation of Section 503 of ERISA and 29 C.F.R. § 2560.503-1 entitles her to *de novo* review of the adverse claim determination at issue.

52. Under Section 502(a)(1)(B) of ERSIA, 29 U.S.C. § 1132(a)(1)(B), a civil action may be brought by a participant or beneficiary to recover benefits due to her under the terms of

their plan, to enforce her rights under the terms of the plan, or to clarify her rights to future benefits under the terms of the plan.

53.    As a result of Reliance's termination of Ms. Cherubin's claim for benefits and deemed denial of her appeal, there exists an actual case and controversy by and between the parties hereto entitling Ms. Cherubin to a declaration of rights clarifying the benefits to which she is entitled under the Plan.

WHEREFORE, Ms. Cherubin prays the Court grant her the following relief with respect to Count I of her Complaint:

a. That the Court enter judgment in favor of Ms. Cherubin and against Defendant and award her all past due disability benefits and future benefits pursuant to the terms of the Plan;

b. That the Court order Defendant to pay Ms. Cherubin prejudgment interest on all benefits that have accrued prior to the date of judgment;

c. That the Court award Ms. Cherubin her reasonable attorney's fees pursuant to 29 U.S.C. § 1132(g) and the costs of suit against Defendant; and

d. That Ms. Cherubin recovers any and all other relief to which she may be entitled.

Respectfully submitted,

/s/ Melanie J Garner
Melanie J. Garner (315058)
Jacob Day (334860)
The Garner Firm, Ltd.
1617 John F. Kennedy Blvd., Suite 1111
Philadelphia, PA 19103
Tel: (215) 645-5955
Fax: (215) 645-5960
melanie@garnerltd.com | jake@garnerltd.com

Dated: January 20, 2026              *Attorneys for Plaintiff*